STATE OF MICHIGAN

 COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN, UNPUBLISHED
 November 25, 2014
 Plaintiff-Appellee,

v No. 316505
 Berrien Circuit Court
MARTENIA EVONE BRANSON, LC No. 2012-003401-FH

 Defendant-Appellant.

Before: BOONSTRA, P.J., and DONOFRIO and GLEICHER , JJ.

PER CURIAM.

 Defendant appeals by right her jury trial conviction for first-degree retail fraud,
MCL 750.356c. The trial court sentenced defendant as a fourth-offense habitual offender,
MCL 769.12, to 365 days’ incarceration in the Berrien County Jail, with credit for one day
served, and ordered her to pay restitution. We affirm.

 I. PERTINENT FACTS AND PROCEDURAL HISTORY

 Defendant’s conviction arose out of events that occurred at a Kohl’s store in Berrien
County on August 5, 2012. On that date, Jennifer Buyce was working as a loss prevention
supervisor at the store. Shannon Elkins was working as a loss prevention officer at the store. At
approximately 5:30 p.m., Buyce and Elkins were in the loss prevention office. Via one of the
security cameras, they observed defendant outside of the store holding a “very large black
purse;” Buyce opined that the purse was empty because it was very flat. Buyce stated that her
attention was drawn to defendant because “something just did not seem right,” and a “large
empty flat purse usually signifies that a person probably has the intention of filling that purse up
with merchandise that they’re not going to pay for.” Defendant was with a woman later
identified as Margo Collins, and a child.

 Buyce recognized defendant because she had observed defendant at the store on four
other occasions in the previous month. When defendant entered the store on August 5, 2012,
Buyce decided to “keep a surveillance” of defendant. Defendant placed her purse at the bottom
of one of the store’s strollers that doubled as a shopping cart, and defendant, Collins, and the
child entered the fragrance department. Buyce testified that Collins selected a bottle of perfume
and placed it in the stroller. Defendant then left Collins and the child and entered the women’s
clothing department, where she took three “orange flowered” shirts and two pairs of pants from a
display table and placed them in the stroller. In addition, defendant removed a “brown
 -1-
multicolored” shirt from a hanger and placed it in the stroller. Buyce testified that individuals
who commit retail fraud often remove items from a hanger before they enter a fitting room with
the items because if they conceal the items while they are in the fitting room, they do not want to
leave an empty hanger in the fitting room (which would signify that they had left the store with
an item). Defendant then entered the housewares department. She selected “a handful” of
towels and placed them in the stroller on top of the other merchandise.

 Defendant then met Collins and the child in the shoe department. Elkins left the office
and went to the shoe department to observe them. The child tried on several pairs of shoes,
including at least one pair of Sketchers brand shoes. Elkins observed the child give defendant
the Sketchers shoes, and saw defendant place the shoes in the cart and the shoebox on top of a
shelf. Via the store monitors, Buyce also observed defendant place a Sketchers shoebox on top
of a shelf. The trio then left the shoe department, after which Elkins checked the shoebox and
found it to be empty. Elkins followed defendant and observed that the purse was on the bottom
of the stroller, the shirts and pants were on top of the purse, and the towels were on top of the
other items; however, she could not actually see the shoes or perfume in the stroller at that time.

 Defendant proceeded toward a fitting room with the stroller. When Buyce observed her
doing so, she directed Dana Patrick, a store employee, to clear all of the clothing, security tags,
and hangers out of the fitting room before defendant entered the area. Patrick cleared the fitting
room shortly before defendant entered, and Buyce confirmed that after Patrick cleared the fitting
room, nobody entered the room before defendant. Defendant remained in the fitting room for
approximately five minutes. When she exited the fitting room, she was pushing the stroller and
returned one pair of pants and one of the orange, flowered shirts to the women’s department.
Buyce noticed the towels in the stroller but could not see the perfume; the other two orange,
flowered shirts; the brown, multicolored shirt; or the second pair of pants in the stroller. When
defendant exited the fitting room, Patrick immediately checked the room again, and it was bare
of any merchandise. Buyce then called the Benton Township Police Department to inform them
that she “would be making an apprehension” for retail fraud.

 Defendant met Collins and the child in the accessories department. The trio proceeded to
a cash register, and defendant paid for the towels. Defendant did not pay for any other items.
After defendant purchased the towels, she removed her purse from the bottom of the stroller and
exited the store. Buyce and Elkins checked the stroller that defendant abandoned and confirmed
there were no items left in the stroller. They then approached defendant outside the store,
identified themselves, and stated that they were apprehending her for retail fraud. Defendant
denied stealing anything, threw the purse towards a trashcan, and said, “It’s not my bag.” Elkins
retrieved the purse, while Buyce informed defendant that the police were en route to the store
and requested that she come to the loss prevention office. Defendant obtained Collins’s car keys,
and drove away from the store. Buyce recorded the license plate number of the vehicle and gave
it to the police when they arrived.

 Buyce and Elkins brought the purse to the loss prevention office and reviewed the
contents with the police officer who responded to the scene. Inside, they found a bottle of
perfume; two orange, flowered shirts; one brown, multicolored shirt; one pair of pants; one pair
of Sketchers shoes; and several lottery tickets. The security sticker was removed from the box of
perfume. Further, the inside of the purse was lined with aluminum foil, which was secured by

 -2-
duct tape. Buyce testified that aluminum foil deters the store’s alarm surveillance system and
prevents an anti-theft tag from activating the sensors on the store’s alarm system. She stated that
bags with similar features are “known” in the loss prevention community and are referred to as
“booster bags.” In addition, the purse contained a security device that was not attached to any
item and did not come from the perfume box. Buyce explained that when two security tags are
placed together, “they throw off the . . . alarm system from going off at the [store’s] doors,” so if
an item with a security tag was placed inside of a purse that already contained another second
security tag, it would have been “double protection” against activating the store’s security
alarms.

 The jury convicted defendant of one count of first-degree retail fraud. The trial court
sentenced defendant as previously noted. At sentencing on May 6, 2013, the trial court
acknowledged defendant’s previous convictions, which were relevant to the habitual offender
sentencing enhancement; however, at that time, proofs were not taken regarding defendants’
previous convictions. On May 10, 2013, a supplemental sentencing hearing was held; at that
time, defendant admitted to three prior convictions and also that these convictions were “known
and considered” by the trial court at the original sentencing hearing on May 6, 2013. The trial
court imposed the same sentence as it had originally ordered.

 This appeal followed, limited to the issue of whether the trial court improperly admitted
evidence of defendant’s visits to the store on several occasions before August 5, 2012, in
violation of MRE 404(b).

 II. STANDARD OF REVIEW

 This Court generally reviews a trial court’s admission of evidence for an abuse of
discretion. People v Waclawski, 286 Mich App 634, 670; 780 NW2d 321 (2009). However, as
discussed below, defendant not only failed to object to the admission of such evidence, but
stipulated to its admission. Defendant thus waived appellate review of this issue. People v
McDonald, 293 Mich App 292, 295; 811 NW2d 507 (2011). A defendant who waives a right
may not then seek appellate review of a claimed deprivation of that right, because his waiver
extinguished any error. People v Carter, 462 Mich 206, 219; 612 NW2d 144 (2000). Assuming
that we were not to find that defendant’s stipulation constituted waiver, she failed to object to the
admission of this evidence before the trial court; we would therefore review defendant’s
challenge for plain error that was outcome determinative. People v Carines, 460 Mich 750, 764;
597 NW2d 130 (1999).

 III. WAIVER

 Defendant has waived appellate review of this issue. The prosecution filed a notice of its
intent to introduce other acts evidence, as required by MRE 404(b)(2). Specifically, the
prosecution sought to introduce evidence that defendant had entered the store on four, recent
prior occasions, and that on each of those occasions she brought the same large, black purse that
she had in her possession on August 5, 2012. In addition, the prosecution noted that “the same
woman and child had accompanied Defendant into the store on the preceding Sunday.” The
prosecution gave a detailed recitation of the expected testimony regarding defendant’s conduct in
the store on the previous occasions and stated that “the similarities between the prior acts and the

 -3-
current charge are clear, indicating that Defendant employed the same plan in committing the
charged offense.” In addition, the prosecution asserted that the evidence was admissible to rebut
defendant’s claim that she did not own the bag, to establish defendant’s identify as the thief, and
to explain why Buyce began to monitor defendant’s movements throughout the store on
August 5. The prosecution also argued that evidence of defendant’s prior conduct would not be
unfairly prejudicial.

 In lieu of a hearing regarding the admissibility of this evidence, defendant “agreed to the
admission of evidence recited in the Prosecution’s Notice,” and the trial court entered an order
permitting the prosecution to “introduce evidence at trial that Defendant had visited Kohl’s on
four occasions prior to August 5, 2012, under the circumstances outlined in the Prosecution’s
Notice.” Defendant clearly stipulated to the admission of evidence regarding the circumstances
surrounding defendant’s previous visits to the store. Because defendant stipulated to the
admission of this evidence, defendant has waived her right to challenge the admissibility of this
evidence. McDonald, 293 Mich App at 295.

 IV. PLAIN ERROR

 Further, even if we were to review this issue for plain error that was outcome
determinative, we would find no such error. Defendant challenges the admission of testimony
from Elkins and Buyce concerning defendant’s previous visits to the store. Elkins testified that
she had seen defendant in the store “the previous Sunday” and that Buyce had also seen her.
Buyce testified to having seen defendant in the store several times before with a large black
purse. Buyce specifically recalled seeing defendant in the store on July 30 or 31, 2012, and at
that time, defendant was carrying the same purse and was also accompanied by Collins. Buyce
stated that when defendant was in the store at the end of July she entered the fitting room with
the black purse, then immediately exited the store. Further, the purse “was small” when
defendant entered the store, but “when she exited, it was large.” However, Buyce explained that
the store’s policy did not allow her to attempt to apprehend defendant on that occasion.

 Michigan Rule of Evidence 404(b)(1) generally governs the admission of other acts, and
provides as follows:

 Evidence of other crimes, wrongs, or acts is not admissible to prove the character
 of a person in order to show action in conformity therewith. It may, however, be
 admissible for other purposes, such as proof of motive, opportunity, intent,
 preparation, scheme, plan, or system in doing an act, knowledge, identity, or
 absence of mistake or accident when the same is material, whether such other
 crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the
 conduct at issue in the case.

In addition, MRE 402 provides that all relevant evidence is generally admissible, but evidence
which is not relevant is not admissible. MRE 401 states that:

 “Relevant evidence” means evidence having any tendency to make the existence
 of any fact that is of consequence to the determination of the action more probable
 or less probable than it would be without the evidence.

 -4-
MRE 403 further provides that:

 Although relevant, evidence may be excluded if its probative value is
 substantially outweighed by the danger of unfair prejudice, confusion of the
 issues, or misleading the jury, or by considerations of undue delay, waste of time,
 or needless presentation of cumulative evidence.

The test for admissibility of other acts evidence under MRE 404(b) requires consideration of
MRE 404(b), MRE 402, MRE 401, and MRE 403. Specifically:

 First, the prosecutor must offer the other acts evidence under something other
 than a character to conduct or propensity theory. MRE 404(b). Second, the
 evidence must be relevant under MRE 402, as enforced through MRE 104(b),1 to
 an issue of fact of consequence at trial. Third, under MRE 403, a “determination
 must be made whether the danger of undue prejudice [substantially] outweighs
 the probative value of the evidence in view of the availability of other means of
 proof and other facts appropriate for making decision of this kind under Rule
 403.” [People v Sabin (After Remand), 463 Mich 43, 55-56; 614 NW2d 888
 (2000) (citation omitted).]

 Evidence of defendant’s prior visits to Kohl’s were offered by the prosecution for a
purpose other than to show defendant’s character or that she acted in conformity with a particular
character on the relevant occasion—the existence of a common scheme, plan, or system. See
Sabin, 463 Mich at 63. Here, evidence that defendant entered the store with Collins, carrying a
large black purse that appeared to be empty on entering, but full on exiting, the store, is the type
of evidence of “uncharged acts contain[ing] common features” with the charged acts that is
admissible under MRE 404(b)(1). Further, this evidence was relevant under MRE 402, as
enforced through MRE 104. Sabin, 463 Mich at 55-56. Pursuant to MRE 401, evidence is
relevant when it has a tendency to make a material fact more or less probable. Sabin, 463 Mich
at 56-57. Moreover, the requirement of materiality “does not mean that the evidence must be
directed at an element of a crime or an applicable defense;” instead, “[a] material fact is one that
is ‘in issue’ in the sense that it is within the range of litigated matters in controversy.” Id. at 57
(internal citations omitted). Specifically, evidence regarding defendant’s ownership of the purse
was within the range of litigated matters in controversy, and the admitted evidence had a
tendency to make this material fact more or less probable. Id. at 56-57. Further, the record
supports a finding that the other acts evidence regarding defendant’s previous visits to the store
was highly relevant to issues central to the case, specifically defendant’s ownership of the purse
and the existence of a common system used by defendant; additionally the evidence was relevant
to explain why she was subject to surveillance by loss prevention officers on the day of the
offense.

1
 MRE 104(B) provides that “[w]hen the relevancy of evidence depends upon the fulfillment of a
condition of fact, the court shall admit it upon, or subject to, the introduction of evidence
sufficient to support a finding of the fulfillment of the condition.”

 -5-
 This evidence was also not unduly prejudicial under MRE 403. Sabin, 463 Mich at 55-
56. “All relevant evidence is prejudicial; it is only unfairly prejudicial evidence that should be
excluded.” McGhee, 268 Mich App at 613-614 (citation omitted). Additionally, “unfair
prejudice refers to the tendency of the proposed evidence to adversely affect the objecting party’s
position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury’s bias,
sympathy, anger, or shock.” Id. Here, nothing in the record indicates that the evidence was
unfairly prejudicial. Although defendant takes issue with statements based on this evidence
made by the prosecution in opening statement and closing argument, such statements are not
evidence and have no bearing on the admissibility of other acts evidence. Lee, 212 Mich App at
256-257. Further, the admitted evidence, that defendant had visited the store previously, carried
a black purse, and on one occasion had been suspected of retail fraud by a loss prevention
officer, was not the type of evidence that might inject “considerations extraneous to the merits of
the lawsuit.” McGhee, 268 Mich App at 613-614. Finally, we note that defendant additionally
failed to request a limiting instruction with regard to the other acts evidence. Sabin, 463 Mich at
56.

 In sum, we conclude that even if defendant had not waived appellate review of this issue,
we find no plain error requiring reversal in the admission of this evidence. Because there was no
error, admission of this evidence did not deprive defendant of her constitutional right to a fair
trial. People v Steele, 283 Mich App 472, 478, 480; 769 NW2d 256 (2009).

 We affirm.

 /s/ Mark T. Boonstra
 /s/ Pat M. Donofrio
 /s/ Elizabeth L. Gleicher

 -6-